UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                       :

JANE ROE AND JANE DOE, individually and   :
on behalf of all others similarly situated,

                                    :

                     Plaintiffs,   :
    -against-                         :

                                    :         12-cv-04788 (NSR)
                                    :         OPINION & ORDER
EMPIRE BLUE CROSS BLUE SHIELD and   :
ST. JOSEPH'S MEDICAL CENTER,

                                    :

                    Defendants.   :
---------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Jane Roe and Jane Doe ("Plaintiffs"), seeking to proceed as a class, filed this action

against Empire Blue Cross Blue Shield ("BCBS") and St. Joseph's Medical Center ("St.

Joseph's") (together, "Defendants") pursuant to the Employee Retirement Income Security Act

of 1974 ("ERISA"). Plaintiffs seek relief for "unlawfully and discriminatorily interfer[ing] with

the attainment of benefits" under ERISA Section 510, 29 U.S.C. § 1140, and for breach of

fiduciary duty under ERISA Section 404, 29 U.S.C. § 1104. Before the Court is Defendants'

motions to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)

and Plaintiffs' cross-motion for a preliminary injunction. For the following reasons, Defendants'

motions are granted and Plaintiffs' motion is therefore moot.

**I.    Facts**

      Plaintiff Jane Roe has been employed by St. Vincent's Hospital in Westchester, a

division of St. Joseph's Medical Center, since September 2007. Following the enactment of the

New York Marriage Equality Act, N.Y. DOM. REL. LAW § 10-a (2011), Jane Roe and Jane Doe

married.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/1/2014

1

St. Joseph's sponsors the Direct POS Plan (the "Plan"), a health plan for its employees that is self-insured. The Plan provides benefits for spouses of employees but does not define "spouse" within the Plan. However, the Plan includes an exclusion for same-sex spouses (the "Exclusion"), providing, "Same sex spouses and domestic partners are NOT covered under this plan." (emphasis in original). St. Joseph's Mem. in Supp. Ex. B (the Plan) p. 61. During the open enrollment period for the Plan in December 2011, Jane Roe sought to add Jane Doe as a dependent to her medical benefits coverage. On December 22, 2011, the St. Joseph's Human Resources department verbally informed Jane Roe that the requested coverage for her spouse was denied because the Plan did not cover same-sex spouses. Jane Roe requested the refusal in writing, which she received on February 8, 2012.

Jane Roe sent a Level 1 Grievance letter to both BCBS and St. Joseph's on April 12, 2012, requesting that the denial of coverage be reversed. She did not receive a response. On May 23, 2012, Jane Roe sent a Level 2 Grievance letter to BCBS and St. Joseph's. BCBS responded on May 29, 2012, stating that "under [the Plan], same sex spouse and domestic partner is an EXCLUSION under the benefit." Compl. ¶ 25.

## II.     Procedural Background

Plaintiffs filed the Complaint on June 19, 2012. The case was assigned to the Honorable Judge Edgardo Ramos. The Court granted Defendants leave to file motions to dismiss on October 2, 2012. On October 18, 2012, Plaintiffs sought leave to file a motion for a preliminary injunction in light of the Second Circuit's decision in *Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012). The Court decided to hold in abeyance the briefing of Defendants' motions to dismiss and on November 7, 2012, heard oral argument on the issue of the preliminary injunction motion. The Court reserved decision on whether to permit Plaintiffs to file the motion for a

2

preliminary injunction. Judge Ramos did not rule on that issue.

The case was reassigned to the undersigned on July 12, 2013. Plaintiffs renewed their request to file a motion for a preliminary injunction on July 22, 2013 in light of the Supreme Court's decision in *United States v. Windsor*, 570 U.S. ---, 133 S. Ct. 2675 (2013). On August 15, 2013, this Court granted Defendants leave to file motions to dismiss and Plaintiffs leave to file a cross-motion for preliminary injunction.

In their Complaint, Plaintiffs allege the class to be: "All persons who are participants in or beneficiaries of BCBS insurance plans in the State of New York who were or might be denied medical benefits coverage as a result of an employer's policy that excludes coverage for same-sex spouses." Compl. ¶ 14. Plaintiffs allege a sub-class of "St. Joseph's Plan participants and beneficiaries who have been or will be affected by St. Joseph's policy of excluding coverage for same-sex spouses." *Id*. at ¶ 15.

### III.    Motion to Dismiss Legal Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).  It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must

be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

On a motion to dismiss, the court may consider the documents that are "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court may deem a document incorporated by reference where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n. 2 (S.D.N.Y. 2012). "Specifically in the ERISA context, '[b]ecause the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss.'" *Faber v. Metropolitan Life Ins. Co.*, No. 08-cv-10588, 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009) (quoting *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005)).

## IV. Discussion
### a. ERISA Preemption

Plaintiffs argue that the result of the Supreme Court decision *U.S. v. Windsor* is that ERISA must follow New York State Law – i.e., the Marriage Equality Act – and mandate non-discriminatory coverage for same-sex couples because of the resulting absence of a Federal law regarding the status of same-sex marriage. The Marriage Equality Act states, "A marriage that is otherwise valid shall be valid regardless of whether the parties to the marriage are of the same or different sex." N.Y. DOM. REL. LAW § 10-a(1) (2011). It further provides,

> No government treatment or legal status, effect, right, benefit, privilege, protection or responsibility relating to marriage, whether deriving from statute, administrative or court rule, public policy, common law or any other source of law, shall differ based on the parties to the marriage being or having been of the same sex rather than a different sex. When necessary to implement the rights and responsibilities of spouses under the law, all gender-specific language or terms shall be construed in a gender-neutral manner in all such sources of law.

4

*Id*. at § 10-a(2). Defendants argue that New York Law is preempted by ERISA. ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan . . . . Congress used the words 'relate to' in [29 U.S.C. § 1144(a)] in their broad sense." *Shaw v. Delta Airlines*, 463 U.S. 85, 97-98, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). However, courts "must presume that Congress did not intend to pre-empt areas of traditional state regulation" through ERISA. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740 (1985). "Issues about marriage and divorce, which may arise under ERISA, are governed by state law and are not subject to the ERISA preemption clause. . . . New York law governs on the question of when parties are lawfully married, which determines the identity of the spouse under both ERISA and the pension plan." *Grabois v. Jones*, No. 94 CIV.2070(TPG), 1998 WL 158756, at *4 (S.D.N.Y. Apr. 3, 1998); *see also Croskey v. Ford Motor Company-UAW*, No. 01 CIV. 1094(MBM), 2002 WL 974827, at *4 (S.D.N.Y. May 6, 2002) ("[The] determination [of the lawful widow entitled to survivor benefits from a pension plan] is to be made in accordance with state law because there is no federal domestic relations law, and marriage and divorce are traditional subjects of state regulation."); *Bond v. Trustees of STA-ILA Pension Fund*, 902 F. Supp. 650, 655 (D. Md. 1995) ("[T]he definition and regulation of marriage is a traditional area of state authority.").

Ultimately, however, whether or not ERISA is preempted for purposes of this action is irrelevant. The question presented by Plaintiffs' Complaint is not whether ERISA or New York State law applies on the issue of marriage, but whether a private plan violates a provision of ERISA by excluding same sex couples from beneficiary status. As Plaintiffs confirm, ERISA

governs the Plan and thus clearly applies to this case. As the claims are presented, the issue is not whether the Court should look to New York State Law or ERISA but whether Plaintiffs have adequately alleged that Defendants violated ERISA.

### b. Claim 1: Claim for Benefits
#### i. Section 510 Caselaw

Plaintiffs claim that Defendants violated Section 510 of ERISA, entitled "Interference with protected rights." Plaintiffs seek relief through Section 502(a)(3) of ERISA which allows a plan participant "to enjoin any act or practice which violates any provision of this subchapter" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter[.]" 29 U.S.C. § 1332(a)(3). Section 510 states, in relevant part,

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

"The Supreme Court has described an employer's discharge of an employee, who had worked for the company for over nine years, four months before his pension would have vested as the 'prototypical' type of claim that Congress intended to cover under section 510." *Lessard v. Applied Risk Management*, 307 F.3d 1020, 1024 (9th Cir. 2002) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990))). The Second Circuit has stated, "Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)). Following that lead, "[c]ourts in this district have therefore 'held that § 510 only proscribes interference with the employment relationship.'"

6

*Cioinigel v. Deutsche Bank Ams. Holding Corp.*, No. 12 Civ. 434(KBF), 2013 WL 120618, at *2 (S.D.N.Y. Jan. 10, 2013) (quoting *Keir v. Unumprovident Corp.*, No. 02 Civ. 8781(DLC), 2010 WL 3566878, at *9 (S.D.N.Y. Sept. 14, 2010)); *Tirone v. New York Stock Exch.*, No. 05 Civ. 8703(WHP), 2006 WL 2773862, at *3 (S.D.N.Y. Sept. 28, 2006) ("plaintiffs must allege that defendant took some type of adverse employment action to interfere with the attainment of their benefit rights under the plan."); *Pelosi v. Schwab Capital Mkts., L.P.*, 462 F. Supp. 2d 503, 512 (S.D.N.Y. 2006) (Section 510 "is designed to protect the employment relationship that gives rise to an individual's benefit rights, not to create an action for 'wrongfully withheld benefits,' which is covered by [ERISA § 502(a)(1)]."); *Maguire v. Level Sights, Inc.*, No. 03 CV 2294, 2004 WL 1621187, at *2 (S.D.N.Y. Jul. 19, 2004) ("To state a claim under § 510, plaintiffs must allege that defendant took some type of adverse employment action to interfere with the attainment of their benefit rights under the plan."); *DeSimone v. Transprint USA, Inc.*, No. 94 CIV. 3130 (JFK), 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996) (citation omitted) ("The focus of § 510 is [ ] the employment relationship; an adverse change in that relationship that is motivated at least in part by the employer's desire to prevent the employee from attaining the benefits under the benefit plan . . ."). Generally, district courts within the Second Circuit follow the same reasoning. *See, e.g.*, *Degrooth v. General Dynamics Corp.*, 837 F. Supp. 485, 489 (D. Conn. 1993), *aff'd*, 28 F.3d 103 (2d Cir. 1994) ("To state a claim under section 510, a plaintiff must allege that adverse employment action was taken against him in retaliation for asserting his rights under ERISA or for the purpose of interfering with the attainment of those rights."); *Swanson v. U.A. Local 13 Pension Plan*, 779 F. Supp. 690, 701 (W.D.N.Y. 1991), *aff'd*, 953 F.2d 636 (2d Cir. 1991) (same).

Many other Circuits similarly have held that an action under Section 510 of ERISA is limited to instances involving adverse employer-employee action. *See Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994) ("[C]ourts construing 'discriminate' [as it is used in Section 510] have concluded . . . that the term should be limited to actions affecting the employer-employee relationship, and we adhere to this construction."); *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 668 (7th Cir. 1993) ("[T]he focus of § 510 is not on amendments to the plan itself. Rather . . . '[i]t is clear from the text of the statute . . . that § 510 was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right. . . . Simply put, § 510 was designed to protect the employment relationship which gives rise to an individual's pension rights. . . . This means that a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.'" (quoting *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990)); *West v. Butler*, 621 F.2d 240, 245-46 (6th Cir. 1980) ("[W]e conclude that discrimination, to violate s 510, must affect the individual's employment relationship in some substantial way."); *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993) ("It is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan. . . . Accordingly, section 510 relates to discriminatory conduct directed against individuals; it does not forbid discrimination relating to the plan in general." (citation omitted)); *Hines v. Massachusetts Mut. Life Ins. Co.*, 43 F.3d 207, 210 n. 5 (5th Cir. 1995) ("Two circuits have restricted the scope of § 510 to acts that affect the employer-employee relationship; in other words, plan amendments by themselves cannot be actionable under § 510."); *Iwata v. Intel Corp.*, 349 F. Supp. 2d 135, 143 (D. Mass. 2004) ("[Plaintiff] has cited no

8

authority to show that the existence of discriminatory terms within a plan creates liability under section 1140.").

However, not all Circuits accept this construction of Section 510. *See Straus v. Prudential Emp. Sav. Plan*, 253 F. Supp. 2d 438, 447 (E.D.N.Y. 2003) (citing the Sixth Circuit in *Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997), as holding that "§ 510's protections must at least be broad enough to incorporate non-employee beneficiaries and former employees" and the First Circuit in *Aronson v. Servus Rubber, Div. of Chromalloy*, 730 F.2d 12 (1st Cir. 1984), as stating that the "discriminatory modification of a pension or retirement plan that intentionally benefits or injures certain identified employees" (citing *id*. at 16)); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133-34 (7th Cir. 1992) ("the emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits . . . . [O]ne of the actions which Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first instance."); *Vogel v. Independence Federal Sav. Bank*, 728 F. Supp. 1210 (D. Md. 1990) (allowing section 510 claim against insurer, not employer, for claims that defendants conspired to deprive plaintiff of his rights under the plan). Although the Second Circuit has addressed such in dicta, *see supra Dister*, 859 F.2d at 1111, it has not directly ruled on the applicability of Section 510 to plan amendments.

### ii.  Application

"Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S. Ct. 1223, 131 L. Ed. 2d 94 (1995). ERISA "does not regulate the substantive content of welfare-benefit plans." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724,

732, 105 S. Ct. 2380, 2385, 85 L. Ed. 2d 728 (1985). Further, "ERISA does not mandate that

employers provide any particular benefits, and does not itself proscribe discrimination in the

provision of employee benefits." *Shaw*, 463 U.S. at 91. Consequently, Courts have found that

plans that discriminate against different types of disabilities or diseases does not violate ERISA.

*See Wilson v. Globe Specialty Prods., Inc.*, 117 F. Supp. 2d 92, 97–98 (D. Mass. 2000) (plan

providing different benefits for mental disabilities as opposed to physical disabilities did not

violate ERISA); *see also McGann v. H & H Music Co.*, 946 F.2d 401, 407 (5th Cir. 1991) ("To

interpret 'discrimination' broadly to include [altering a plan in a way that lowered the limitation

for benefits payable for AIDS-related claims from $1,000,000 to $5,000] would clearly conflict

with Congress's intent that employers remain free to create, modify and terminate the terms and

conditions of employee benefits plans without governmental interference.").

      Here, the Court is presented with a Plan provided by a private actor that does not define

"spouse," but contains an Exclusion that specifically eliminates same-sex spouses from

qualifying for benefits. The question before the Court, then, is whether ERISA prohibits a private

employer from excluding from the definition of "spouse" an entire category of people such that

the outcome is that same-sex married couples are not entitled to the same benefits under their

employer-sponsored plan as other legally married couples. ERISA has long been held to be a

regulator of plans, not a dictator of plan terms. *See Lockheed v. Spink*, 517 U.S. 882, 890 (1996)

("[E]mployers or other plan sponsors are generally free under ERISA, for any reason, at any

time, to adopt, modify, or terminate welfare plans." (quoting *Curtiss-Wright Corp*, 514 U.S. at

78)). Further, the legislative history provides that although an outright anti-discrimination

provision of ERISA was contemplated, it was ultimately not included in the Act because other

federal laws already proscribed such discrimination. *Id*. at 104 ("During floor debates, Senator

Mondale questioned whether the Senate bill should be amended to require nondiscrimination in ERISA plans. Senator Williams replied that no such amendment was necessary or desirable. He noted that Title VII already prohibited discrimination in benefit plans, and stated: 'I believe that the thrust toward centralized administration of nondiscrimination in employment must be maintained. And I believe this can be done by the Equal Employment Opportunity Commission under terms of existing law.' 119 Cong. Rec. 30409 (1973). Senator Mondale, 'with the understanding that nondiscrimination in pension and profit-sharing plans is fully required under the Equal Employment Opportunity Act,' *id.*, at 30410, chose not to offer a nondiscrimination amendment.").

Moreover, section 510 has consistently been excluded from application to allegedly discriminatory plan terms, especially by courts in this Circuit.[1] The "discrimination" proscribed by that section was not intended to conflict with the strong policy under ERISA that has long been held to allow plans to provide benefits under terms as it sees fit.[2] An employer enjoys the

---

[1] The language cited by Plaintiff from the Supreme Court case *Inter-Modal Rail Emps. Ass'n v. Atchinson, Topeka and Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997) ("The right that an employer or plan sponsor may enjoy in some circumstances to unilaterally amend or eliminate its welfare benefit plan does not[] . . . justify a departure from § 510's plain language"), is dicta that refers to the formal amendment process required under ERISA to amend a plan so that employers may not "amend their plans one participant at a time." *Id.* at 516. In fact, the cited language supports the case law discussed *supra* that considers section 510 as barring employers from taking adverse action in response to an employee's exercise of a right under a plan.

[2] The Supreme Court in *Inter-Modal* explains the policy behind the flexibility provided to employers to mold welfare plans as such:

> The flexibility an employer enjoys to amend or eliminate its welfare plan is not an accident; Congress recognized that "requir[ing] the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans." S.Rep. No. 93-383, p. 51 (1973). Giving employers this flexibility also encourages them to offer more generous benefits at the outset, since they are free to reduce benefits should economic conditions sour. If employers were locked into the plans they initially offered, "they would err initially on the side of omission." *Heath v. Varity Corp.*, 71 F.3d 256, 258 (CA 7 1995).

*Inter-Modal*, 520 U.S. at 515. Section 510 comes into play by "counterbalance[ing] this flexibility by ensuring that employers do not 'circumvent the provision of promised benefits.'" *Id.* (citing *Ingersoll-Rand Co.*, 498 U.S. at 143, 111 S. Ct. at 485; H.R. Rep. No. 93-533, p. 17 (1973)).

"flexibility . . . to amend or eliminate its welfare plan[,]" *Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka and Santa Fe. Ry. Co.*, 520 U.S. 510, 515 (1997), meaning that a plan may, for example, choose not to provide benefits to spouses at all. Jane Roe suffered no adverse employment action in this case; she remains employed by St. Joseph's.

Plaintiffs insist that the Supreme Court decision in *United States v. Windsor* changes the landscape. In *Windsor*, the Supreme Court held that section 3 of the Defense of Marriage Act ("DOMA"), which defined marriage as being between a man and a woman only, violated the equal protections afforded under the Fifth Amendment.[3] Since the Supreme Court's decision in *Windsor*, it appears that only one district court has addressed the application of *Windsor* to ERISA. In that Eastern District of Pennsylvania case, the court held that the provision of spousal benefits to a deceased's same-sex spouse in a plan that did not define "spouse" was required following the demise of DOMA. *Cozen O'Connor P.C. v. Tobits*, Civil Action No. 11–0045, 2013 WL 3878688 (E.D. Pa. Jul. 29, 2013). In that case, in the absence of a definition of "spouse" in the plan, and in light of the recognition of the marriage as valid of the state of the couple's domicile (Illinois), the federal government must interpret ERISA as recognizing that marriage.

The Court in *Windsor* alluded to the widespread implications of the Federal definition of marriage under DOMA, stating, "The particular case at hand concerns the estate tax, but DOMA is more than a simple determination of what should or should not be allowed as an estate tax

---

[3] "DOMA seeks to injure the very class New York seeks to protect. By doing so it violates basic due process and equal protection principles applicable to the Federal Government. See U.S. Const., Amdt. 5; *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group. *Department of Agriculture v. Moreno*, 413 U.S. 528, 534–535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). In determining whether a law is motived by an improper animus or purpose, "'[d]iscriminations of an unusual character'" especially require careful consideration. *Supra*, at 2692 (quoting *Romer*, *supra*, at 633, 116 S.Ct. 1620). DOMA cannot survive under these principles." *U.S. v. Windsor*, 570 U.S. ---, 133 S. Ct. 2675, 2693 (2013).

refund. Among the over 1,000 statutes and numerous federal regulations that DOMA controls are laws pertaining to Social Security, housing, taxes, criminal sanctions, copyright, and veterans' benefits." *U.S. v. Windsor*, 570 U.S. ---, 133 S. Ct. 2675, 2694 (2013). The Court held section 3 of DOMA unconstitutional in part because it "force[d] same-sex couples to live as married for the purpose of state law but unmarried for the purpose of Federal law." *Id*. at 2694. "*Windsor* makes clear that where a state has recognized a marriage as valid, the United States Constitution requires that the federal laws and regulations of this country acknowledge that marriage." *Cozen O'Connor, P.C. v. Tobits*, Civil Action No. 11–0045, 2013 WL 3878688, at *4 (E.D. Pa. Jul. 29, 2013). The critical difference between *Cozen* and the facts here is the Exception clause in St. Joseph's Plan.

Agencies have issued certain guidance in the wake of *Windsor*. In a recently released IRS Notice, the IRS stated that in order to meet the requirements of a qualified retirement plan for tax purposes, a plan must be compatible with the Supreme Court's decision in *Windsor*. IRS Notice 2014-19 (Apr. 4, 2014). The IRS explained that any plan whose terms are not consistent with *Windsor* – i.e., plans that exclude same-sex spouses from the definition of spouse – must be amended by December 31, 2014 in order to satisfy the Federal tax rules. *Id*. The Department of Labor issued a Technical Release adopting a rule that "the term 'spouse' will be read to refer to any individuals who are lawfully married under any state law, including individuals married to a person of the same sex." U.S. Dept. of Labor, Emp. Benefits Sec. Admin., Technical Release No. 2013-04, Guidance to Employee Benefit Plans on the Definition of "Spouse" and "Marriage" under ERISA and the Supreme Court's Decision in *United States v. Windsor*, (Sept. 18, 2013), http://www.dol.gov/ebsa/newsroom/tr13-04.html. The clear import of *Windsor* is a shift in federal policy toward enforcing state laws that recognize same sex marriage. The ultimate result

is that practical implications may encourage employers to embrace the belief espoused by the Marriage Equality Act "that same-sex marriage ought to be given recognition and validity in the law for those same-sex couples who wish to define themselves by their commitment to each other." *Windsor*, 133 S. Ct. 2675, 2689. Whatever the practical import of agency regulations on welfare plans, this Court must apply ERISA to the claims made by Plaintiff as the law currently stands. As the Court discussed above, ERISA gives employers broad discretion in writing the terms of welfare benefit plans and Section 510 does not apply to the facts of this case because there has been no adverse employment action.

Plaintiffs do not bring any constitutional violation claim, but argue that by holding the Exclusion to be permissible under ERISA, the Court essentially would be enforcing, and thereby participating, in discriminatory action. This equal protection argument fails. The Equal Protection Clause of the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). It is well-settled that "where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations,' . . . in order for the discriminatory action to fall within the ambit of the constitutional prohibition." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S. Ct. 1965, 1971, 32 L. Ed. 2d 627 (1972) (citing *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S. Ct. 1627, 1634, 18 L. Ed. 2d 830 (1967)). Here, the Court is limited to deciding the two ERISA claims brought by Plaintiffs and does not purport to endorse or condone the Exclusion in the Plan. The question of whether plans that exclude same sex couples from the definition of "spouse" are constitutional is not before the Court and is thus left for another day. The Court does not address whether the Exclusion is lawful under other federal laws and holds only that the Exclusion does not violate Section 510 of ERISA as it is currently promulgated.

14

### c.   Claim 2: Violation of Fiduciary Duties

Plaintiffs argue that BCBS and St. Joseph's violated their fiduciary duties under ERISA

Section 404(a) by enforcing the Exclusion and refusing to provide benefits to Jane Doe, while

knowing that the provision was unlawful.[4] Under the terms of ERISA, a fiduciary is only a

fiduciary "to the extent that he acts in such capacity in relation to a plan." *Pegram v. Herdrich*,

530 U.S. 211, 225-26 (2000); 29 U.S.C. § 1002(21)(A).[5]

"Trustees do not breach their fiduciary duties under ERISA simply by presiding over a

plan which fails in some respect to conform to one of ERISA's myriad provisions[, but r]ather . .

. , where the trustee fails to discharge one or more of the duties described in 29 U.S.C. § 1104."

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d

175, 184 (E.D.N.Y. 2005). "The proposition that a trustee who administers a pension plan

knowing it to be in violation of ERISA acts in violation of his fiduciary duties under ERISA,

---

[4] Section 404(a) provides:

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a).

[5] The definition of a fiduciary under ERISA is one "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

15

while perhaps facially attractive, is based on an overly broad reading of ERISA § 404(a), and comes to this court conspicuously unsupported by caselaw." *Id.* at 185 (quotation omitted).

Because Plaintiff's argument is that Defendants enforced a Plan term that was unlawful under ERISA, the Court's determination that the Plan does not violate ERISA therefore precludes Plaintiff's fiduciary duty argument. By the terms of the fiduciary duty provision of ERISA, a fiduciary must carry out his or her duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. 1104(a)(D). The Court has determined that the Plan does not violate section 510 of ERISA and therefore, carrying out the terms of the Plan cannot be a violation of fiduciary duties. Accordingly, it is not necessary to determine whether either of the defendants was acting as a fiduciary.

### d. Plaintiffs' Preliminary Injunction & Class Allegations

Because the Court has found that the Plan does not violate ERISA, Plaintiffs' motion for a preliminary injunction is moot. Similarly, Defendants' motions to strike the class allegations are moot.

### V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully requested to terminate the motions, Docket Nos. 28, 32, and 37, and close the case.

Dated:    May 1, 2014                                    SO ORDERED:
          White Plains, New York

                                                         NELSON S. ROMÁN
                                                         United States District Judge

16